In re ROSENTHAL et al.

(District Court, E. D. New York. November 16, 1912.)

1. BANKRUPTCY (§ 114*)—CONCEALMENT OF ASSETS—BURDEN OF PROOF—DUTY OF BANKRUPT.

Where a statement of the property of a bankrupt firm in January, 1910, showed an apparent surplus of $990, and on March 9th following there was in the place of business some $2,000 worth of merchandise, but when the store was taken possession of by the United States marshal, later on that day, only merchandise which thereafter sold for $115 could be found, the burden was on the bankrupts to produce the property or show what had become of it.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 164–166; Dec. Dig. § 114.*]

2. BANKRUPTCY (§ 183*)—PARTNERSHIP PROPERTY—DIVISION.

Where a bankrupt firm paid $200 to one of its partners in return for her investment in the business after she saw it was not going profitably, and the partners knew that the firm's financial condition was precarious, such payment constituted a withdrawal of the partner's interest before the firm's debts were paid, and she was therefore bound to repay the same to the firm's trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 282; Dec. Dig. § 183.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Jacob Rosenthal and others, individually and as members of the firm of S. Meyer & Co. Application for an order for the surrender of assets. Granted.

Goldsmith, Rosenthal, Mork & Baum, of New York City, for petitioners.

Edward E. Rosenblume, of Brooklyn, for bankrupts.

CHATFIELD, District Judge. [1] The trustee in bankruptcy herein has made a motion to compel the bankrupt to turn over about $2,000 worth of merchandise, representing the balance of stock unaccounted for between the 15th day of January, 1910, when the assets of the concern consisted of $4,190, and the 9th day of March, 1910, when the merchandise in the store was taken possession of by the United States marshal. It appears that this property, taken possession of by the marshal, was sold by an auctioneer appointed by the court for $115, and one of the creditors testified that the same property taken possession of by the marshall was disposed of by the auctioneer. One of the bankrupts also testified that when he left, the morning of the seizure, there were some $2,000 worth of goods in the store; but that testimony is not borne out by the value received from the auction sale, and, if any property was removed before the marshal took possession, the bankrupts must explain what became of that property, for they were responsible until the marshal actually made his levy. The special commissioner has reported that the firm showed an apparent surplus in January, 1910, of but $990, and that on March 9, 1910, there was in the place of business some $2,000 worth of merchandise, and that the trustee is claiming the difference between the

$2,000 worth of merchandise which was there on March 9, 1910, and the sum realized, or $115.

The special commissioner has seemed to throw upon the trustee the burden of proving what became of the $2,000 worth of merchandise which, by the bankrupts' statement, was in the store when they left on the morning of the seizure. He assumes that the marshal has accounted for but $115 of this as sold; that is, he has assumed that the property which the bankrupts say was in the store is the same property which the marshal seized.

But the presumption is the other way. The property which was sold was presumably the same property which the marshal seized, and there is no evidence to the contrary. This property was not worth $2,000, and if the bankrupts had more than that amount of property on the morning of the seizure, and have utterly failed to explain what became of that property, at a time when the premises were in their possession, and when no robbery or removal of goods by any outside party has been shown, the only conclusion would be that the bankrupts were not testifying correctly when they stated that the property was there on the morning of that day.

But, as a matter of fact, the trustee is not claiming the property which the bankrupts say was in the store that morning. He is claiming the property which they have failed to account for, from the time that the statement was made to their creditors in January. He is merely presenting their statement that $2,000 worth of goods were in the store on the morning as an argument for his claim that they should account for their property, and, in their failure so to do, that they should be ordered to turn it over. The position of the trustee seems to be entirely correct, and the bankrupts, on the testimony as reported by the special commissioner, have utterly failed to show what they have done with their property. The report will have to be set aside, and unless the bankrupts wish to present further testimony, and can persuade the court that they have such testimony which will be worthy of credence, and which will explain some of the matters not made clear upon the previous reference, an order will be made directing them to turn over the amount of property which the testimony shows has not been accounted for by them.

[2] The special commissioner has also held that a former partner, one Yetta Meyer, should repay some $200, which she herself says she obtained from the bankrupts in return for her investment in the business, after she saw that it was not going profitably. In fact, she obtained this money after a statement had been made to the creditors and an extension of time given. The partners knew of the condition of the firm, and it was a plain transfer of partnership property, either in contemplation of bankruptcy or under such circumstances that no partner had a right to withdraw his interest in the firm until the firm's debts were paid. As to this item of $200, the report of the special commissioner will be confirmed, and Yetta Meyer will be directed to repay the amount to the bankrupt estate.